IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GARY PAUL KIRKMAN, | § | |
| | § | |
| *Petitioner,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-21-0903 |
| | § | |
| BOBBY LUMPKIN, | § | |
| | § | |
| *Respondent.* | § | |

## MEMORANDUM OPINION AND ORDER

Petitioner, a state inmate represented by counsel, filed a section 2254 habeas petition challenging his 2018 conviction and 60-year sentence for continuous sexual abuse of a child under the age of fourteen. Respondent filed a motion for summary judgment (Docket Entry No. 4), to which petitioner filed a response in opposition (Docket Entry No. 6).

Having considered the motion, the response, the pleadings and the record, and the applicable law, the Court **GRANTS** the motion for summary judgment and **DISMISSES** this lawsuit for the reasons shown below.

### I. BACKGROUND AND CLAIMS

A Fort Bend County jury convicted petitioner of continuous sexual abuse of a child under the age of fourteen, and the trial court sentenced him to a 60-year term of imprisonment on October 22, 2018. The conviction was affirmed on appeal, *State v. Kirkman*, No. 01-18-00978-CR, slip op. (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd),

and discretionary review was refused. Petitioner did not file an application for state habeas relief prior to filing the instant lawsuit.

In his federal habeas petition, petitioner claims that the state trial court erred by admitting the sexual assault nurse examiner ("SANE") records and related witness testimony into evidence in violation of his Sixth Amendment right of confrontation.

## II. FACTUAL BACKGROUND

In affirming petitioner's conviction on appeal, the intermediate state court of appeals set forth the following statement of facts:

> In February 2014, 13-year-old April [a pseudonym] told her aunt, with whom she was living, that she had been sexually abused by her biological father, appellant. April's aunt contacted the police, who began an investigation. April was interviewed at the Children's Advocacy Center, where she disclosed some of the information about the abuse, including that it began when she was five years old and ended when she moved out of her father's house at age 12. During a subsequent interview at the Children's Advocacy Center, April disclosed that her mother was aware of the abuse but did nothing.
>
> Subsequent to her outcry, April underwent a medical examination conducted by a SANE, Ella Buchanan. At such an examination, the SANE obtains the necessary consents, collects the patient's history, conducts a head-to-toe assessment documenting injuries or the lack thereof, conducts an anogenital inspection and takes photographs of the related structures, collects laboratory specimens, talks about her findings with the patient, and provides the patient with discharge instructions, including follow-up referrals. At trial, the State offered the records created at this exam, State's Exhibit 32, through the testimony of Dr. Stacy Mitchell, the administrative director of forensic nursing services at Harris Health Systems and Buchanan's supervisor at the time.
>
> Mitchell testified that the SANE assigned to this case was Buchanan, and the medical director was Dr. Rebecca Giradet. Buchanan conducted the SANE examination, which was then subject to a case review by Mitchell and Giradet. As part of the review, Mitchell and Girardet "would make sure that . . . all the

2

laboratory tests were ordered according to protocol if evidence needed to be collected with the sexual assault kit, then it was done appropriately based upon the history that was given to us by the patient. We would review photographs of any injuries or just review the photographs to make sure that the photographs were of good quality, and then we reviewed all of the documentation to make sure that it was clear and concise." Mitchell explained that during the review, they would often be able to see things on the photographs using magnification that the SANE conducting the exam could not see at the time of the exam because the SANE was only able to look at the photographs on the small screen on the back of the camera. After Mitchell and Girardet conducted the review, the SANE who performed the exam would be permitted to make an addendum to their initial report, but they were not required to do so.

When reviewing April's exam, Mitchell and Girardet "looked at the images in this case, [and] felt that there were a couple of findings that probably should have been documented, some notches versus transections [to the hymen]." Based on what they discovered during the review, Mitchell and Giradet made notes in the record that they noticed "deep hymnal notches vs. transections @ 4:00 & 7:00." After reviewing the photographs with Mitchell, Buchanan amended her documentation of the genital exam, striking through "No Trauma" and noting that the hymen was "fluffy, estrogenized; [with] deep notches @ 4 & 7 o'clock, no transections."

*Kirkman*, slip op. at 2–4.

### III. LEGAL STANDARDS

A. <u>Habeas Review</u>

This petition is governed by provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under the AEDPA, federal habeas relief cannot be granted on legal issues adjudicated on the merits in state court unless the state adjudication was contrary to clearly established federal law as determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme

3

Court. *Harrington v. Richter*, 562 U.S. 86, 98–99 (2011); *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000); 28 U.S.C. §§ 2254(d)(1), (2). A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court, or if it confronts a set of facts that are materially indistinguishable from such a decision and arrives at a result different from the Supreme Court's precedent. *Early v. Packer*, 537 U.S. 3, 7–8 (2002).

However, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 562 U.S. at 102. As stated by the Supreme Court in *Richter*,

> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal.

*Id.*, at 102–103 (emphasis added; internal citations omitted).

The AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller–El v. Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying

4

factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller–El*, 537 U.S. at 330–31. This presumption of correctness extends not only to express factual findings, but also to implicit or unarticulated findings which are necessary to the state court's conclusions of mixed law and fact. *Murphy v. Davis*, 901 F.3d 578, 597 (5th Cir. 2018).

    B.    <u>Summary Judgment</u>

In deciding a motion for summary judgment, the district court must determine whether the pleadings, discovery materials, and the summary judgment evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

While summary judgment rules apply with equal force in a section 2254 proceeding, the rules only apply to the extent that they do not conflict with the federal rules governing habeas proceedings. Therefore, section 2254(e)(1), which mandates that a state court's findings are to be presumed correct, overrides the summary judgment rule that all disputed facts must be construed in the light most favorable to the nonmovant. Accordingly, unless a petitioner can rebut the presumption of correctness of a state court's factual findings by

clear and convincing evidence, the state court's findings must be accepted as correct by the federal habeas court. *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

## IV.  ANALYSIS

Under the Confrontation Clause of the Sixth Amendment, as made applicable to the states through the Fourteenth Amendment, "in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." *Pointer v. Texas*, 380 U.S. 400, 403 (1965). In addressing a confrontation issue, a court must consider (1) whether the defendant had a prior opportunity to cross-examine the absent declarant, and (2) whether the statement at issue is testimonial in nature. *Crawford v. Washington*, 541 U.S. 36, 59 (2004).

A statement is testimonial if "the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis v. Washington*, 547 U.S. 813, 822 (2006). In evaluating the statement, a court must determine whether, in light of all the circumstances and viewed objectively, the primary purpose of the statement was to create an out-of-court substitute for trial testimony. *Ohio v. Clark*, 576 U.S. 237, 245 (2015). "[W]hen a statement is not procured with a primary purpose of creating an out-of-court substitute for trial testimony . . . the admissibility of a statement is the concern of state and federal rules of evidence, not the Confrontation Clause." *Michigan v. Bryant*, 562 U.S. 344, 358–59 (2011).

Petitioner's sole habeas claim alleges that the trial court violated his Sixth Amendment confrontation rights by admitting the SANE records and related surrogate witness testimony. Petitioner agrees that SANE records generally do not implicate a right of confrontation because they are not testimonial in nature. *See Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 312, n.2 (2009) (noting that medical reports created for treatment purposes are not testimonial); *United States v. Barker*, 820 F.3d 167, 172 (5th Cir. 2016) (finding out-of-court statements of child victim to a SANE nurse to be non-testimonial because the primary purpose of the conversation was to medically evaluate and treat the child). However, petitioner argues that the SANE records in this case were testimonial and gave rise to his right of confrontation because (1) SANE Buchanan and Dr. Girardet made testimonial written notes on the report but did not testify at trial, and because (2) the records were kept separately as "forensic records" rather than "health records."

Petitioner raised this claim on direct appeal, but it was denied by the intermediate state court of appeals. Because that court issued "the last reasoned opinion" on the matter, the intermediate state appellate decision must be reviewed to determine whether the denial of petitioner's claim was contrary to, or an unreasonable application of, federal law. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

In denying petitioner's claim, the intermediate state court of appeals found in relevant part as follows:

1.  Statements by medical providers in SANE records

Appellant argues that the written findings by the SANE and the doctor (as opposed to those of the child complainant) were assertions of fact and not made for purposes of medical diagnosis and treatment, thus are testimonial and subject to a confrontation clause challenge. Texas courts considering this issue have held to the contrary.

\* \* \* \*

We agree with these courts holding that doctor's and nurse's observations and notes in a SANE medical record are not testimonial because they are for the purpose of diagnosis and treatment. Indeed, there was evidence in this case that the SANE examination and the subsequent review were for the purpose of treating sexual assault patients.

During a hearing on the admissibility of Mitchell's testimony, Mitchell explained that "a sexual assault nurse examiner [SANE] is a nurse who is specifically trained and educated to provide care to those who have experienced sexual assault[.]" Mitchell explained that a SANE "will conduct a physical assessment, which is a head-to-toe assessment, looking for any type of injuries, the lack of injuries . . . a general physical assessment." The SANE would then take a history of the patient and then conduct an anogenital inspection, during which she would examine and photograph the patient's genitalia, looking for injuries or indications of possible trauma." Mitchell testified that the history was important because

> that's telling me what exactly happened and the details, so, again, I know what the type of contact was and how do I form a treatment plan, which labs will we need to get, and are there any—you know, what is the discharge instructions, do we need to have medications, all of those sorts of things. So, it's helping to formulate the plan of care.

Specimens would also be collected for the laboratory, then the SANE would "provide [the patient] with discharge instructions with follow-up referrals[.]"

Mitchell testified regarding care provided by doctors, stating:

> There are physicians that are specially trained to be medical forensic providers. There can be emergency room doctors who are specially trained to provide care to patients who have experienced sexual assault. There are physicians, such as pediatricians, who are specially trained and who are called child abuse pediatricians because that is their fellowship and their specialty that they've done extra training in.

Mitchell further testified that Dr. Girardet was a pediatrician trained to provide care to children who have been sexually assaulted. Regarding the review procedure, Mitchell testified as follows:

> Part of it was to review the cases to make sure that, if laboratory studies needed to have been ordered and done according to protocol, that they were done, that evidence was collected that needed to be collected according to protocol, that the patient–each patient got the referrals that they needed to the community and all of the whole care of the patient was documented appropriately.

Mitchell and Dr. Giradet performed these reviews of every examination conducted by a SANE in the Harris Health System. Because there was evidence that the SANE examination, including the SANE and pediatrician's notes therein, were created for the purposes of medical diagnosis and treatment, they are not testimonial.

2.    SANE record kept separately

At trial, while testifying about State's Exhibit 32, the SANE record, Mitchell mentioned that some of the complainant's medical records were kept separately and that she was only testifying about the SANE records. Defense counsel objected that, "under Crawford . . . that makes the SANE document, this portion, this portion of the medical record, that makes this testimonial, because it is a record that is kept completely separate. It is not part of the medical record that is made for treatment and for diagnosing. There are findings that are here but that is [sic] not incorporated and referenced with this digital file that is not present in court." The trial court overruled the objection.

On appeal, and without any authority, appellant again argues that, because the SANE records were kept separately from other portions of the medical record,

9

they are testimonial because they were created primarily for use in a criminal prosecution. We disagree. When Mitchell was questioned about why the SANE records were kept separately, the following exchange took place:

> Q. So, there's nothing unusual about the separation of those records. Is there a different purpose for each of the types of records? Like, is the medical record, is there a different purpose for that record versus the SANE record?
>
> A. They both serve the same purposes of collecting information so that you know how to take care of a patient. They both serve the same purposes of documenting histories and medical histories and laboratory tests that are ordered and results and plans of care. It's just the type of the information, the sensitivity of the information is what makes the medical forensic record a little more unique and allows for us to have it separate from the regular medical records.

The fact that the SANE records are subsequently separated and stored separately from other, less sensitive, medical records does not change the reason that they were created in the first place, *i.e.*, to provide a plan of care for the patient. We overrule issue one.

*Kirkman*, slip op. at 8–14. Thus, the state court held that the SANE records were not testimonial in nature, that the manner in which the records were kept did not override their primary health care purpose, and that petitioner's confrontation rights were not violated by admission of the records (and surrogate testimony) into evidence.

Petitioner disagrees with the intermediate state court of appeals' analysis, and argues that the SANE records in his case were testimonial because they were recorded, stored, and amended in such a way as to suggest to a reasonable person that the records might be used at a later trial. The intermediate state court of appeals rejected petitioner's argument, as

10

shown above, and the Texas Court of Criminal Appeals refused discretionary review. Petitioner's disagreements with the state courts' determinations do not meet his burden of proof under the AEDPA standard of review. Moreover, this Court's independent review of the record finds no fault with the state court's decision.

The state courts on direct appeal rejected petitioner's claim for habeas relief and refused discretionary review. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, federal law or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of petitioner's Sixth Amendment habeas claim.

## V. CONCLUSION

Respondent's motion for summary judgment (Docket Entry No. 4) is **GRANTED** and this case is **DISMISSED WITH PREJUDICE**. Any and all pending motions are **DISMISSED AS MOOT**. A certificate of appealability is **DENIED**.

Signed at Houston, Texas, on     JUL 2 7 2022    .

ALFRED H. BENNETT
UNITED STATES DISTRICT JUDGE